## Bishop v. Roberts, et al.

(Decided February 8, 1918.)

### Appeal from Clay Circuit Court.

Judgment—Essentials in General.—A plantiff must make out his case by competent evidence before he can have a judgment.

A. B. HAMPTON for appellant.

H. F. FARMER and RAWLINGS & WRIGHT for appellees.

OPINION OF THE COURT BY JUDGE MILLER—Reversing.

By their petition in equity filed in the Clay circuit court on Sept. 20, 1911, the appellees America Roberts and John E. Roberts, her husband, instituted this action against Alex Bishop and Perry Combs to quiet America Roberts' title to a tract of land known as lot No. 12 in the division of the lands of her father, Perry B. Burns, deceased, and described in the petition by metes and bounds. The tract contains about 600 acres; and, the petition as amended alleged that America inherited it from her father, and that it had been conveyed to her by Dick-

inson, a special commissioner appointed for that purpose by the Clay county court on April 6, 1885; that the plaintiff was in the actual possession of said tract and had been in possesion thereof to a well marked and defined boundary under said deed since 1885; and, that for many years previous to the death of Perry B. Burns, he and those under whom he claimed had held possession of all of said tract of land, owning and claiming the same to the boundary set out in the petition.

The petition further alleged that the defendant Bishop was asserting a claim to a part of the land therein described; and that Bishop and Combs had cut timber therefrom of the value of $25.00; and by way of relief it asked that America Roberts' title to the land be quieted and that she recover $25.00 damages from the defendants.

The first paragraph of the answer is a traverse of the material allegations of the petition. By a second paragraph the defendant Bishop alleged he was the actual owner and in the possession of a 100-acre survey lying on the waters of Newfound creek, which he described in a general way; that he and those under whom he claimed had been in the quiet and peaceable possession of said tract of land for more than fifty years, claiming and using it to a well defined and plainly marked boundary; that those under whom he claimed were in the actual adverse possession of all the land on the left hand fork of Newfound creek at the time the deed was made to America Roberts in 1885, and that said deed, to the extent it attempted to convey the land so held by defendant and his grantors, was champertous and void and conveyed no title to America because said land was then held adversely to her ancestor, Perry Burns, who never owned or claimed any land on Newfound creek; and, defendant interposed the statutes of champerty and limitations in bar of the plaintiff's right to recover.

Bishop made his answer a counter-claim against the plaintiffs and asked that his title to the hundred-acre tract be quieted. The reply traversed the affirmative allegations of the answer and counter-claim. Passing the objection that the petition states a case in ejectment, and not a case to quiet title, we will consider the case upon the merits.

In taking proof it was developed that Perry B. Burns had acquired title to a 25-acre tract under a patent is-

sued to him in 1863; that Elisha Bishop, the father of the defendant, Alex Bishop, obtained title to the 100 acres now occupied by Alex, through a patent issued to him in 1865; that the entire 25-acre tract patented to Perry B. Burns in 1863 lay within the boundary described in the petition; that a portion of the 100-acre tract patented to Elisha Bishop in 1865, lay within the boundary described in the petition; and, according to the contention of Mrs. Roberts, Elisha Bishop's 100-acre patent overlapped the senior Perry Burns' 25-acre patent to the extent of nine or ten acres.

The chancellor's judgment declared that America Roberts was the owner of the 25-acre tract patented to her father, Perry Burns, in 1863, describing it by metes and bounds so as to overlap Bishop's 100-acre tract, and that she was entitled to the immediate possession thereof. From that judgment Bishop prosecutes this appeal.

In a division of Perry B. Burns' estate all of his lands lying upon Meadow Branch were allotted to the plaintiff, America Roberts, by commissioners appointed by the county court; and Dickinson, the special commissioner, made her deed therefor in 1885. About three years later, however, John E. Roberts, her husband, approached Morgan and Combs, the two surviving commissioners, and, claiming that a mistake had been made in their report as to the description of the land on Meadow Branch, he asked them to make a supplemental report correcting the description. They did so; and by a corrected deed made by Dickinson as commissioner in 1888, the alleged errors of description in the first commissioner's deed were corrected. The petition sets out the description contained in the corrected deed.

It further appears from the proof that by patent No. 43,423 issued to Perry B. Burns in 1870 he obtained title to 200 acres of land adjoining the Elisha Bishop 100-acre patent; but as this patent of 1870 does not interfere with the Elisha Bishop patent of 1865, and is junior to it, it need not be further considered.

Waiving the several minor points raised by the appellant, we will address ourselves to the principal objection, that the judgment of the chancellor is not sustained by the proof. We think this objection is well grounded.

The land in controversy lies near the dividing line between Owsley and Clay counties. The most prominent natural object in this neighborhood is a ridge running

in a westwardly direction and dividing the lands lying on the headwaters of Meadow Branch on the south side, from the lands lying on the headwaters of Newfound creek upon the opposite side of the ridge; and the real question in contest between the parties to this action is whether any part of America Roberts' land lies upon Newfound creek on the north side of the ridge. The Elisha Bishop 100-acre patent of 1865 lies upon the north side of the ridge and extends southwardly to it; its southern boundary line calling for the ridge. The judgment of the chancellor ignored the boundary set out in the petition, but declared that the northern end of the Perry Burns 25-acre patent of 1863, amounting to nine or ten acres, extended over the ridge and upon the waters of Newfound creek, and overlapped the Bishop patent to that extent.

As we understand this case the entire controversy turns upon the location of the Perry B. Burns 25-acre patent of 1863; and upon that point there is no satisfactory proof. The plaintiff, John Roberts, himself a surveyor, when testifying concerning the location of the Perry B. Burns patent No. 43,423 for 200 acres, testified as follows:

"Q. What other patents did you find lying in the vicinity of this Perry B. Burns patent you speak of? A. I found a 25-acre patent in the name of Perry B. Burns, dated 1863. Q. How does this patent lie in regard to that part of the lands in controversy in this action? A. I cannot state except as I have shown it on the map before me. I hooked it on from the second corner of the Perry B. Burns patent No. 43,423, and platted same on the map from that connection. . . . Q. You speak of a 25-acre survey made in the name of Perry B. Burns. Now does this survey cover any part of the Elisha Bishop survey, under which the defendant, Alex Bishop, claims; if so, how much does it cover? A. The way I have it on the map shows that it covers about twelve acres of it. . . . Q. What surveying did you ever do or see done on the 25 acres you mention? A. I never stretched a chain on it; but I went and showed the beginning corner to Burke the same day I showed him the other corners, and hooked it on from his base line, and also hooked on other patents. Q. Is the corner that you say is the beginning corner to the 25-acre patent on the waters of Bullskin, or on Newfound creek? A. It is on the Meadow Branch of Bullskin creek. Q. Then you cannot say from seeing these lines run

on the ground that this survey reaches over on to Newfound creek at all, can you? A. It shows by the plat that it runs over on that creek. I never saw it surveyed. Q. Does the 200-acre survey No. 43,423 call for any of the lines of the 25-acre survey? A. I don't think it does. Q. Does your deeded boundary call at any place to run with any of the lines of either the 200-acre survey or the 25-acre survey? A. I don't think it calls for any patent lines."

It will thus be seen that Roberts arbitrarily located the beginning point of the 25-acre survey and platted that survey upon the map upon which the judgment is based without any substantial reason for his action.

The only other testimony that may be said to have any substantial value upon this point is that of Abner, the surveyor, and he says he located the beginning corner of the 25-acre survey at the place pointed out by Roberts. Abner also testified that the corrected commissioner's deed of 1888 to America Roberts embraced 350 acres that were not on the waters of the Meadow Branch and extended up to the Owsley county line; and that the original commissioner's deed of 1885 covered only 165 acres. No witness attempts to give a good or even a plausible reason for locating the 25-acre survey as Roberts platted it; on the contrary the proof shows, if it shows anything, that it was improperly located and platted on the map. In making the survey Abner found none of the corner trees called for by the patent; and, neither the description contained in the 200-acre patent No. 43,423, nor the description in the commissioners' deed calls for any line in the 25-acre survey. Moreover, America Roberts has never had any part of the lap fenced or in her possession, and does not so claim; she now claims under the 25-acre patent of 1863, although the petition makes no reference to it.

According to the patent the beginning of the boundary of the 25 acres is "at a beech and black gum at the end of the fork ridge of the Meadow Branch of Little Bullskin," while the fourth or most northern call of the patent runs to a "path leading to the head of Newfound and Buffalo." This description indicates that the 25-acre patent lies on the Meadow Branch and south of the head of Newfound creek. Upon this subject Abner testified as follows:

"Q. I notice in the patent that the beginning corner of that 25-acre survey is described thus: 'Beginning at

a beech and black gum at the end of a fork ridge of the
Meadow Branch of Little Bullskin.' Is that the point
where you began to run that survey from? A. I began
at a beech stump on the bank of a branch. Q. Was that
the end of a fork ridge of the Meadow Branch of Little
Bullskin? A. I would not consider it the end of a fork
ridge. . . . Q. Is there a fork ridge in the Meadow
Branch that runs down some distance below where Mr.
Roberts showed you the beginning of said survey? A.
Yes, sir. Q. About how far below? A. About 250 or
300 yards. A. If you should commence that survey at
the end of this fork ridge and run its courses and dis-
tances as you did where you began, tell the court whether
it would cross the Newfound side or not? A. I think
not.''

Furthermore, Morgan, one of the commissioners who
divided the Perry B. Burns land, R. F. Burns, the son
and administrator of Perry B. Burns, and A. H. Burns,
another son, all testified that Perry B. Burns never owned
or claimed any land on Newfound creek, and that he only
claimed up to the ridge. And, no witness claims that the
beginning point of the survey of the 25-acre patent, as
located by Roberts, begins ''at the end of a fork ridge.''
It does appear, however, that there is a fork ridge lower
down the Meadow Branch; and A. H. Burns, the son,
testified that the 25-acre tract was located too far up that
stream. Furthermore, Morgan testified that when John
E. Roberts came to him in 1888 for the purpose of hav-
ing the description in the commissioner's deed corrected
he made no claim that his wife owned any lands on New-
found creek or that the deed should be corrected so as to
embrace any lands on that creek.

It is true that two nephews of Perry B. Burns, and
Geo. Burns, his son, testified that they had heard conver-
sations between Perry B. Burns and his brothers to the
effect that Perry B. Burns claimed a strip of land on
Newfound creek; but this testimony is too indefinite to
attract much attention. So, the plaintiff's case is really
sustained only by the arbitrary act of Roberts in locat-
ing the 25-acre patent, since Abner's survey is based
solely on Roberts' location of the beginning point. Not
only is this true, but the weight of the proof tends to show
that the 25-acre survey was incorrectly located by
Roberts; it lies further south; and does not extend over
the ridge, which it must do in order to reach the waters

of Newfound creek. Adhering therefore to the cardinal rule that the plaintiff must make out her case by competent evidence before she can ask relief at the hands of the chancellor, we feel compelled to say that she has wholly failed in this respect.

Judgment reversed and cause remanded with instructions to the chancellor to dismiss the petition.